## S00A1418. TURNER v. THE STATE.
(541 SE2d 641)

BENHAM, Chief Justice.

Appellant James Steven Turner was convicted in 1998 of malice murder in connection with the January 1979 death of James Corvin.[1]

---

[1] The victim was last seen alive on January 14, 1979, and his body was discovered in April 1979. Appellant was arrested May 10, 1995, and a Catoosa County grand jury returned a true bill in the September 1995 term charging appellant with malice murder. Appellant's trial began on September 8, 1998, and concluded on September 10 with the jury's return of a guilty verdict and the court's imposition of a sentence of life imprisonment. Appellant's motion for new trial, filed September 16, 1998, by trial counsel and amended

He appeals the judgment of conviction, and we affirm.

The victim's body was found in April 1979 in the trunk of his girlfriend's car in the parking lot of a hospital in Chattanooga, Tennessee. The 1979 report created following the autopsy on the badly-decomposed body concluded that the body's condition made it impossible to determine the cause of death, but noted that the victim was wearing an imitation leather jacket with a bullet hole, powder burns, and bloodstains, and that a .22 caliber missile was recovered from the body. The victim's girlfriend testified that the victim left their Hixson, Tennessee, home, driving her car, on January 14, 1979, to meet a person he had not identified. Appellant's wife testified that appellant was expecting a visit from the victim on January 14; that appellant had told her he was going "to do [the victim] in"; that the victim arrived at appellant's home in Catoosa County, Georgia, and she directed him to their garage where appellant operated an automobile body shop; that she heard some noise from the garage; and that appellant then asked her to follow him in their car while he drove the victim's car to a Chattanooga hospital parking lot.

In December 1994, after being divorced from appellant, appellant's wife (they were remarried at the time of appellant's trial) told her brother, a captain in the Chattanooga Police Department, of the 1979 events and that appellant had told her the murder weapon was buried under a friend's home. Appellant's wife also told her brother that appellant had married her two weeks after the killing in order to keep her from testifying against him. A .22 Magnum was unearthed from under the friend's home and an expert opined that the gun was one of several models which could have fired the bullet recovered from the victim. Because of the corroded condition of the gun, however, no testing was done. The friend who buried the gun he had received from appellant in the fall of 1979 testified that appellant had asked him to keep the gun for him, and later told him that the gun had been involved in "something bad."

1. The evidence was sufficient to authorize appellant's conviction for malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The State was not required to present the testimony of an eyewitness to the homicide in order to prove beyond a reasonable doubt that the defendant murdered the victim. See *Simmons v. State*, 271 Ga. 563 (1) (522 SE2d 451) (1999); *Rushing v. State*, 271 Ga. 102 (3) (515 SE2d 607) (1999) (circumstantial evidence is sufficient to authorize a murder conviction).

2. Through appellate counsel, appellant contends he was denied

February 18, 2000, by appellate counsel, was denied March 22, 2000. His notice of appeal was filed on April 21, and the case was docketed in this Court on May 10, 2000. It was submitted for decision on briefs on July 3, 2000.

his right to effective assistance of counsel on two grounds: (a) trial counsel had a conflict of interest which prevented him from adequately cross-examining the chief witness against appellant, appellant's wife; and (b) trial counsel had not prepared for trial or conducted an adequate and effective investigation of the issues.

In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782 (1) (325 SE2d 362) (1985). The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. *Mobley v. State*, 271 Ga. 577 (523 SE2d 9) (1999). The trial court's determination with respect to effective assistance of counsel will be affirmed unless the trial court's findings are clearly erroneous. *Johnson v. State*, 266 Ga. 380, 383 (467 SE2d 542) (1996).

(a) Included within the constitutional right to counsel is the right to representation that is free from conflicts of interest. *Wood v. Georgia*, 450 U. S. 261, 271 (101 SC 1097, 67 LE2d 220) (1981); *Sallie v. State*, 269 Ga. 446, 448 (499 SE2d 897) (1998). In order for appellant to prevail on his claim that his attorney was operating under a conflict of interest that violated his right to counsel, he must show an actual conflict of interest that adversely affected his attorney's performance. *Henry v. State*, 269 Ga. 851 (3) (507 SE2d 419) (1998). Appellant contends his trial counsel's representation of appellant's wife in 1995, after appellant's arrest, in a civil action against appellant to modify child custody, prevented counsel from adequately cross-examining his former client when she testified as a prosecution witness during appellant's 1998 murder trial. Where, as here, the alleged conflict of interest is based upon defense counsel's prior representation of a prosecution witness, "we must examine the particular circumstances of the representations to determine whether counsel's undivided loyalties remain with [the] current client, as they must." *Hill v. State*, 269 Ga. 23 (2) (494 SE2d 661) (1998). Of the factors we considered in *Hill* "that arguably may interfere with [the attorney's] effective cross-examination" of the witness/former client, the only one at issue in the case at bar is "the possibility that privileged information obtained from the witness (in the earlier representation) might be relevant to cross-examination." Id. Appellant contends his wife's efforts to gain child custody was her motivation for telling police appellant was involved in the victim's death, and that trial counsel's representation of her in the custody action prevented counsel from effectively discrediting the witness and asking

her about statements she had made to him. The trial transcript shows that trial counsel's cross-examination of the witness portrayed her as a woman who might have accused appellant of murder in order to obtain custody of her children from him, and whose actions did not comport with her claim that he had murdered the victim. As the trial court noted, the witness's assertion of her attorney-client privilege would prevent any attorney, not just trial counsel, from asking the witness about statements she had made to her attorney. Since appellant has not shown that trial counsel was under an actual conflict of interest that adversely affected counsel's performance, his contention of ineffective assistance of counsel due to a conflict of interest must fail. Id.

(b) Appellant also contends he was denied effective assistance of counsel due to trial counsel's purported failure to prepare for trial and to conduct an adequate investigation of the issues. On the day the case was sounded for trial, trial counsel informed the court that he was not ready to go to trial because his client's failure to pay his legal fee had prevented counsel from being "in a position to prepare the case." The trial court announced the case would proceed to trial with trial counsel being given the opportunity to interview any witness prior to the witness testifying. The trial transcript shows trial counsel cross-examined all witnesses, voiced many objections, and argued several motions and evidentiary points. At the hearing on appellant's motion for new trial, trial counsel testified he had read a number of reports the district attorney's office had provided and described himself as "well-prepared" for the State's use of the out-of-court statement made by appellant's wife to police and the introduction of the autopsy report prepared by the medical examiner who had died in the years between the autopsy and the trial. See Division 4, infra. In the order denying the motion for new trial, the trial court concluded that trial counsel "was an effective advocate at the trial of the case on behalf of [appellant]." Our review of the record leads us to conclude that the trial court was not clearly erroneous in its determination; accordingly, we affirm the trial court's determination that appellant was afforded effective assistance of counsel at trial.

3. Appellant contends the Superior Court of Catoosa County had no jurisdiction of his case because venue was not established in Catoosa County beyond a reasonable doubt. Venue is a jurisdictional fact, an essential element in proving that the accused is guilty of the crime charged, and must be proven beyond a reasonable doubt. *Jones v. State*, 272 Ga. 900 (537 SE2d 80) (2000). A criminal homicide is statutorily required to be tried in the county in which the cause of death was inflicted (OCGA § 17-2-2 (c)); however, if it cannot be determined in what county the crime was committed, it is considered, for venue purposes, "to have been committed in any county in

which the evidence shows beyond a reasonable doubt that it might have been committed." OCGA § 17-2-2 (h). The testimony of appellant's wife summarized above constitutes sufficient evidence to establish beyond a reasonable doubt that the cause of death was inflicted in appellant's Catoosa County garage, making Catoosa County the proper trial venue under § 17-2-2 (c). The same testimony was sufficient to show beyond a reasonable doubt that the murder might have been committed in Catoosa County, making Catoosa County the proper trial venue under § 17-2-2 (h). Consequently, Catoosa County was the appropriate venue for appellant's trial, and the Superior Court of Catoosa County had jurisdiction to hear the case.

4. Admitted into evidence at trial was a redacted certified copy of the 1979 autopsy report written by the now-deceased medical examiner who performed the autopsy on the victim and who concluded that the cause of death was impossible to determine due to the marked deterioration of the body. The current Hamilton County, Tennessee, medical examiner was called as a witness by the State. He read aloud the report as redacted and opined that the victim had died as a result of a gunshot wound passing through the abdomen. Appellant contends the trial court admitted impermissible hearsay when it allowed the current medical examiner to read aloud the redacted autopsy report and to give an opinion as to the cause of death.

"The opinion of experts on any question of science, skill, trade or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." OCGA § 24-9-67. Generally, an expert cannot voice an opinion based upon facts not within the expert's personal knowledge or based upon observations or reports not admitted into evidence; however, an expert may give an opinion based upon facts personally observed by the expert and upon data collected by another and personally observed or reviewed by the expert. *Westbrook v. State*, 186 Ga. App. 493 (2) (368 SE2d 131) (1988). In the case at bar, the expert based his opinion on the facts contained in the autopsy report, including factual data collected by the medical examiner who had performed the 1979 autopsy. The expert opinion admitted at trial was not the restatement of the diagnostic opinion of another expert. Compare *Mallard v. Colonial Life &c.*, 173 Ga. App. 276 (326 SE2d 6) (1985). The trial court did not allow impermissible hearsay when it permitted the current medical examiner to read aloud the 1979 autopsy report as redacted since the report had been admitted under the business records exception to the rule against the admission of hearsay.[2]

---

[2] A document admitted under the business records exception must be redacted to

5. Appellant's failure to object at trial to the admission of testimony concerning an incriminating statement appellant made during a break on the last day of the trial results in waiver of appellant's right to raise the issue on appeal. *Minor v. State,* 264 Ga. 195 (1) (442 SE2d 754) (1994).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 22, 2001.

*Lindsay H. Bennett,* for appellant.

*Herbert E. Franklin, Jr., District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Tammie J. Philbrick, Assistant Attorney General,* for appellee.

---

exclude conclusions, opinions, estimates, and impressions of third parties not before the court. *Duncan v. State,* 271 Ga. 16 (3) (515 SE2d 388) (1999).